**In re William J. WITKOWSKI, Debtor.**

**Bankruptcy No. 94–40914–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 30, 1994.

---

George R. Desmond, for debtor.

Marvin H. Greenberg, for Shawmut Bank.

Kenneth I. Goodman, for Sylvan Nursery, Inc.

David L. Bertonzzi, for Edwin's Gifts Too.

Kathleen P. Dwyer, Chapter 7 Trustee.

*MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

## I. BACKGROUND

The matter before the Court is a "Motion To Avoid Real Estate Attachments Under Section 522(f)" (the "Motion") filed by the Debtor, William J. Witkowski (the "Debtor"). The Motion seeks to avoid judicial liens held by Shawmut Bank, N.A. ("Shawmut"), Sylvan Nursery, Inc. ("Sylvan") and Edwin's Gifts Too ("Edwin")[1] (collectively, the "Liens") against the Debtor's residence at 284 Union Street, Franklin, Massachusetts (the "Property"). The Property is, in turn, held by the Debtor and his non-debtor spouse as tenants by the entirety.

The Motion was initially heard by the Court on August 11, 1994. Objections were filed by each of the alleged lienholders. However, Shawmut failed to appear at the hearing and was, therefore, defaulted. With respect to Sylvan and Edwin, a dispute arose at the hearing by and between those alleged lienholders and the Debtor as to (1) the valuation of the Property and (2) the legal effect of avoidance under 11 U.S.C. § 522(f)(1).[2] Therefore, the Court continued the matter to August 25, 1994 for a hearing on valuation. The Court also set an August 23, 1994 deadline for the filing of briefs on the legal issues.

At the hearing on August 25, 1994, the alleged lienholders produced no admissable evidence with respect to the value of the Property. Therefore, the Court accepted the Debtor's valuation of $150,000.00. The parties have also agreed (or failed to contest) the following liens or encumbrances on the Property:

| | |
|---|---|
| Property value | $150,000.00 |
| First mortgage (American Residential Mortgage Corp.)— | ($122,500.00) |
| Second Mortgage (Fleet National Bank)— | (20,000.00) |
| Gross equity before judicial liens | 6,800.00 |
| Shawmut attachment | (4,919.47) |
| Sylvan attachment | (6,126.03) |
| | (47,222.93)[3] |
| Net equity after judicial liens | (51,468.03) |

None of the lienholders have challenged the Debtor's assertion that the Debtor's interest in the Property is fifty (50%) percent of the total ownership interest. Therefore, based on the foregoing valuation and the balance of the outstanding first and second mortgages, the Debtor would enjoy equity of $3,400.00 (the "Gross Equity"), prior to the impact of the judicial liens. Giving effect to the judicial liens, the Debtor would enjoy no equity whatsoever. However, the Debtor has, pursuant to 11 U.S.C. § 522(d)(1),[4] opted to exempt the full amount of that Gross Equity. The dispute between the parties relates to the effect of that exemption upon the judicial liens.

---

1. Each of liens were in the nature of judgment executions levied upon the subject property.

2. Section 522(f) provides in relevant part:
 (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) to this section, if such lien is—
 (1) a judicial lien[.]
 11 U.S.C. § 522(f)(1).

3. The amount set forth is that amount recorded at the Norfolk County Registry of Deeds.

4. Section 522(d)(1) provides in relevant part:
 (d) The following property may be exempted under subsection (b)(1) of this section:
 (1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property· or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
 11 U.S.C. § 522(d)(1).

Sylvan argues that any avoidance of its judicial lien could have no effect on the lien insofar as it encumbers the interest of the debtor's spouse. Sylvan is clearly correct. Section 524(e) provides that "[the] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Debtor's spouse has not filed a petition in this Court and does not share in the benefits of the Debtor's discharge in this Chapter 7 case.

Sylvan also argues that its lien against the Debtor's interest should not be avoided, but should instead be subordinated to the amount of the Debtor's exemption (the "Subordination Approach"). Sylvan maintains that any other result would be "unconscionable" inasmuch as property values "wax and wane". Through subordination, Sylvan could enjoy the benefits of any future appreciation of the Property. Shawmut and Edwin also argue for the Subordination Approach for similar reasons. However, Edwin also argues an alternative approach. Edwin maintains that if § 522(f)(1) requires *avoidance* of liens, the statute has been read to require nullification of only those liens or portions of liens which impair the value being exempted (the "Partial Avoidance Approach"). The liens which remain, in whole or in part, would be spared.

Were this Court to employ a Subordination Approach, each of the Liens would remain on the property as valid encumbrances, but junior to the Debtor's Gross Equity of $3,400. Were this Court to employ a Partial Avoidance Approach, the same result would ensue, except that the lien of Shawmut (but for the default herein) would be reduced by the amount of the Debtor's Gross Equity of $3,400.00. The Debtor argues that § 522(f)(1) requires that each of the liens be fully avoided (the "Full Avoidance Approach").

Unfortunately, each of the foregoing approaches can find support in bankruptcy court case law in this District.

Judge Gabriel began the string with his decision of *In re Carney*, 47 B.R. 296 (Bankr. D.Mass.1985). Judge Gabriel employed the Full Avoidance Approach, setting forth the following step-by-step guideline:

> To determine impairment the following steps should be taken. Step one: subtract each valid non-judicial lien in order of priority from the value of the property. Step two: from the remainder subtract the exemption claimed. Step three: from this remainder subtract the judicial liens. To the extent that all or any portion of a judicial lien exceed the remainder left over from step two, it may be avoided.

47 B.R. at 299. The *Carney* case appears to have been cited with approval by the Supreme Court in the case of *Owen v. Owen*, 500 U.S. 305, 313 n. 5, 111 S.Ct. 1833, 1838 n. 5, 114 L.Ed.2d 350 (1991).

Judge Lavien appeared to join in the Full Avoidance approach in the case of *In re Princiotta*, 49 B.R. 447 (Bankr.D.Mass.1985).

Judge Hillman reached the issue in his decision of *In re D'Amelio*, 142 B.R. 8 (Bankr.D.Mass.1992). Judge Hillman acknowledged the existence of those cases which followed the Full Avoidance Approach as well those that adhered to the Partial Avoidance Approach. Judge Hillman was, however, troubled by what might follow avoidance, that is, the possible appreciation of the property. *Id.* at 10. Judge Hillman found it inequitable that the Debtor, rather than the creditor with the avoided lien, would enjoy the benefits of appreciation. *Id.* Furthermore, the Court found instruction from the decision of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), pursuant to which the Supreme Court restricted the avoidability of liens in Chapter 7 cases. *Id.* Therefore, the Court took the further step of employing the "Subordination Approach", pursuant to which interests in the property were reordered in priority. *Id.* Those judicial liens that impaired the exemption were subordinated to the debtor's exemptable interest. "Under this analysis, no judicial liens need be declared completely or partially void; to avoid can be to go around as well as declare a nullity." *Id.*

Judge Kenner ensued with her decision of *Bellenoit v. Avco Leasing Services (In re Bellenoit)*, 157 B.R. 185 (Bankr.D.Mass. 1992). In that case, Judge Kenner, citing various hypotheticals for clarification, followed *D'Amelio* in the Subordination Approach. *Id.* at 187.

Next at bat was Judge Queenan in his decision of *In re Gonzalez*, 149 B.R. 9 (Bankr.D.Mass.1993). Judge Queenan rejected the Full Avoidance Approach, relying heavily on the teachings of *Dewsnup*. *Id.* at 11. He also rejected the Subordination Approach on the grounds that § 522(f) explicitly uses the term "avoidance" and not "subordination". *Id.* Judge Queenan, therefore, adopted the Partial Avoidance Approach. *Id.* at 10.

Finally, Judge Hillman returned to the issue in his decision of *In re Garro*, 161 B.R. 869 (Bankr.D.Mass.1993). In that case, Judge Hillman found himself persuaded by the *Gonzalez* opinion, and determined to thereafter follow the Partial Avoidance approach. *Id.* at 870.

Having reviewed the foregoing line of cases, this Court is comforted by two immediately identifiable thoughts. Firstly, no matter how this Court decides, it will be following someone. Secondly, with the benefit of contrary interpretations of the relevant statute by five eminent bankruptcy judges in this District, no interpretation by this Court of § 522(f) can be accused of departing from its "plain meaning".

 This Court believes that the Full Avoidance approach is the correct interpretation of Section 522(f) for a variety of reasons.[5] This Court does not believe that the *Dewsnup* case applies. *Dewsnup* was about the interplay of 11 U.S.C. § 506(a) and 11 U.S.C. § 506(d) and held that lienstripping was not allowable in Chapter 7 cases. The foundation of the Supreme Court's decision was the absence of any Chapter 7 language evidencing Congressional intent to vary the pre-Code practice of allowing real property liens to survive bankruptcy unaffected. 502 U.S. at 419–20, 112 S.Ct. at 779. In § 522(f)(1), we find unmistakable Congressional intent to avoid liens. Therefore, the ambiguity which so troubled the Supreme Court is not present. Furthermore, this Court agrees with both *Gonzalez* and *Garro* that subordination, while possibly more equitable to lienholders, has no support in the statute. Section 522(f) is about lien avoidance. By way of comparison, 11 U.S.C. § 544, also a lien avoidance provision, has not been interpreted to subordinate affected liens. Therefore, this Court cannot follow the Subordination Approach.

With respect to the Partial Avoidance Approach, it seems to this Court contrary to basic tenets of commercial practice and fairness to avoid liens, in whole or in part, and yet leave subsequently perfected liens unaffected. Priority of liens is a matter of state law, and, although § 522(f)(1) provides the authority to void the liens, an elevation of subsequently perfected liens over validly perfected senior liens appears beyond the authority provided in § 522(f)(1). Furthermore, the Partial Avoidance Approach leaves debtors without the benefit of the asset which § 522(f)(1) appears to promise. If the Debtor here avoids some or all of the Shawmut lien, but the Sylvan and Edwin liens remain, what will be the value of § 522(f)(1)? The Property cannot be refinanced and, absent the unlikely consent of Sylvan and Edwin, cannot be sold. And the risk of Sheriff's sale remains. This Court does not believe that the benefits of § 522(f)(1) were intended to be illusory. The legislative history, while meager, is sufficient to demonstrate Congress' belief that § 522 was related to the fresh start which the Bankruptcy Code promises to the honest debtor:

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property

5. The Court would also note that, while not applicable to this case, § 522(f)(1) has been recently amended to conform to the Full Avoidance Approach. *See Bankruptcy Reform Act of 1994*, Pub.L. 103–394, § 304, 108 Stat. 4106 (1994).

to the extent that the property could have been exempted in the absence of the lien.... The avoidance power is independent of any waiver of exemption.

*LaPointe v. Snelling & Snelling, Inc. (In re LaPointe),* 150 B.R. 92, 94 (Bankr.D.Conn. 1993), *quoting,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 362 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862, 6318.

For the foregoing reasons, the Debtor's Motion is allowed. To the extent of the Debtor's interest in the Property, the judicial liens of Shawmut, Sylvan and Edwin are avoided and deemed null and void.